UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION; and AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF RHODE ISLAND, Plaintiffs | : | |
| v. | : | C.A. No. 05-060 ML |
| PATRICK LYNCH, Attorney General of the State of Rhode Island, in his official capacity; and DAVID CURTIN, Chief Disciplinary Counsel for the State of Rhode Island, in his official capacity, Defendants | : | |

**MOTION TO DISMISS**

Now come Defendants and hereby move this Court to dismiss the above-captioned matter for the reasons set forth in the memorandum of law attached hereto.

Respectfully submitted,

DEFENDANTS
By Their Attorney

PATRICK C. LYNCH
ATTORNEY GENERAL

Rebecca Tedford Partington

Rebecca Tedford Partington #3890
Deputy Chief--Civil Division
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400 x 2303

4

**CERTIFICATION**

I, the undersigned, hereby certify that a copy of the foregoing document was mailed, postage prepaid, on this 7th day of March, 2005 to the person or persons indicated below:

Melina Stifuz

Mark W. Freel, Esquire
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION; and AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF RHODE ISLAND, Plaintiffs | : | |
| v. | : | C.A. No. 05-060 ML |
| PATRICK LYNCH, Attorney General of the State of Rhode Island, in his official capacity; and DAVID CURTIN, Chief Disciplinary Counsel for the State of Rhode Island, in his official capacity, Defendants | : | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

After being rejected by the Rhode Island Supreme Court, In Re Rule Amendments, 815 A.2d 47 (R.I. 2002), and a Senior Judge of this Court[1], Plaintiff stubbornly attempts to continue to have the State address this issue. Its claim is that rules 5.4 and 7.2 of the Rules of Professional Conduct, as well as R.I. Gen. Laws 11-27-3, prohibiting direct payment of attorney's fees to them, are unconstitutional. For several reasons, all of which center around notions of comity and finality, this Court should immediately dismiss this action.

**Exclusively State Concern**

This Court should not entertain the present case, since the practice of law is an area of exclusively state concern. In declining to exercise jurisdiction in a case involving an attorney who took issue with his bar examination results, the federal court sitting in

---

[1] *See* Transcript, Rhode Island Medical Society v. Pine, No. 97-416(L), 9-30-04. (Copies of decisions relied upon by the Defendants are provided in a separate Appendix of cited authority).

the Southern District of New York recognized that "federal courts have abstained in numerous areas where state regulation involved matters of substantial state concern and where state policies were carried out in a statutorily established regulatory program by state officials." Fruchtman v. New York State Board of Law Examiners, 534 F.Supp. 692 (S.D.N.Y. 1982)(citations omitted). *See also,* Ginger v. Circuit Court for the County of Wayne, 372 F.2d 621 (6th Cir. 1967)(in declining to exercise jurisdiction where attorney challenged disbarment, the Sixth Circuit held that "The courts of the State of Michigan have exclusive jurisdiction over the admission of attorneys, the regulation of the practice of law, and the discipline and disbarment of attorneys, so far as the practice of law in the state courts is concerned"). Statutes and administrative rules regulating the practice of law are part of the inherent police power of the state, and are considered "a necessity" by the Rhode Island Supreme Court, because of the perceived potential for abuse. Creditors' Service Corp. v. Cummings, 57 R.I. 291, 190 A. 2 (1937).

Rules 5.4 and 7.2 of the Rules of Professional Conduct prohibit fee sharing with nonlawyers. It has been a criminal offense to share fees with non-lawyers in this state since at least 1923. *See,* R.I. Gen. Laws §11-27-6. More recently, the Rhode Island Ethics Advisory Panel was asked whether the precise payment method sought by the instant Complaint was allowable, and answered "NO" in 2000. In 2002 the Rhode Island Supreme Court was asked to amend this State's Rules of Professional Conduct to allow direct fee payments to the ACLU, and declined. In Re Rule Amendments, supra.

The 2000 Opinion of the Ethics Advisory Panel states that it is ethically improper under Rule 5.4(a) and 7.2(c) for a lawyer who undertakes *pro bono* representation in RI-ACLU sponsored litigation to pay a percentage of court-awarded attorneys' fees to the

RI-ACLU. The Panel read the Rules as clear on their face—attorneys' fees cannot be given to nonlawyers—even *pro bono* organizations.

In 2002, our Supreme Court considered a request from the ACLU to allow such fee payments, and denied it, citing the Rhode Island General Laws and the case of Creditors' Service Corp. v. Cummings, 57 R.I. 291, 190 A.2 (1937). Our Supreme Court held "...the General Assembly has made and declared to be criminal the very acts and conduct that the petitioners now seek to have sanctioned in their requested amendments to our Rules of Professional Conduct." 815 A.2d at 49.

The Court in 2002 cited with approval Creditors' Service Corp., where in 1937 it was held that the criminalization of the conduct at issue was within the power of the legislature. Since the practice of law is "affected with a public interest" and since it is "the right and duty of the state to regulate and control it so that the public welfare will be served and promoted" and that "[l]egislation that subjects an offender to punishment for practicing law while not so authorized is dictated by policy and is in the interest of and for the protection of the public", the Court declined to allow the payment of the type sought here. 815 A.2d at 49, citing Creditors' Serv. Corp. Importantly, the Court in 2002 suggested to the ACLU that corporations organized pursuant to the Professional Service Corporations Act, R.I. Gen. Laws § 7-5.1-1 are allowed to practice law in this state. It is assumed that the ACLU has not taken the Court's advice, instead seeking to haul the State into court as much as possible to repeatedly address this issue.

In American Civil Liberties Union/Eastern Missouri Fund v. Miller, 803 S.W.2d 592, *cert. den.* 500 U.S. 943 (Mo. 1991), that Court likewise held that an attorney could not ethically reimburse the ACLU following an award of attorneys' fees. Miller involved

a tort and contract action by the ACLU against one of its former attorneys for recoupment of fees paid to the attorney for work performed on an ACLU case. In the decision, the Missouri court noted the "long established rules of our profession which proscribe this condemned practice of lawyers splitting fees with nonlawyers." 803 S.W.2d at 593. As in Rhode Island, Missouri law made it a misdemeanor to divide fees with a nonlawyer. That court held that without question the criminal statute applied to their situation. As in Rhode Island, there was an ethics advisory opinion prohibiting payment to the ACLU. As in the present case, the ACLU argued that the prohibition infringed on its First Amendment rights. In disagreeing, the Missouri Supreme Court wrote:

> ...the prohibition against fee-splitting does not infringe upon First Amendment rights so as to violate the Constitution. Indeed, a scholarly article by ACLU's trial counsel in this case concedes that 'the Supreme Court has never expressly extended First Amendment protection to fee-sharing arrangements with nonprofit groups.'

803 S.W.2d at 594-5.

As for the argument that the rule, the statute and the opinions undermine an act of Congress (42 U.S.C. § 1988)[2], that is wholly without merit. Congress intended to have *prevailing parties* compensated when they were successful and bring the civil rights

---

[2] Section 42 U.S.C. 1988 reads in pertinent part:

> In any action or proceeding to enforce a provision of sections . . . 1983 . . . the court, in its discretion, may allow *the prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs . . .

(Emphasis added.) On its face, section 1988 indicates that a fee is allowed to a party, rather than the party's lawyer or, as in this case, to a third party. *See* Venagas v. Mitchell, 495 U.S. 82 (1990) (reaffirming that is the civil rights plaintiff, not the civil rights lawyer, who is entitled to a fee award under section 1988); Gilbrook v. City of Westminster, 177 F.3d 839, 873-74 (9th Cir. 1999) (section 1988 requires that attorney fee awards be made directly to the prevailing party, with the ultimate disposition of the award dependent on the contract between the lawyer and the client). Judge Lagueux expressly noted that nothing in section 1988 compels or even supports the payment of the fee award to a third party.

claim. The statute says nothing about payment to counsel. This being a matter peculiarly reserved to the States, this Court should decline to entertain the present matter.

**Rooker-Feldman**

> The Rooker-Feldman doctrine is a basic principle of subject matter jurisdiction that federal district courts should not serve as appellate courts to state courts. The only appropriate federal appellate court to a state court is the United States Supreme Court. Therefore, a federal district court should not review issues already determined by a state court.

Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F.Supp.2d 206, 214 (D.R.I. 2002) (citations omitted); see also Wilson v. Shumway, 264 F.3d 120, 125 (1st Cir. 2001) (nothing Rooker-Feldman principle that "lower federal courts lack jurisdiction to review decisions of the state courts"); Wang v. New Hampshire Bd. Of Registration in Med., 55 F.3d 698, 703 (1st Cir. 1995) ("Lower federal courts are without subject matter jurisdiction to sit in direct review of state court decisions.")' Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d 620, 628 (1st Cir. 1990) ("Review of state decisions may be obtained only in the United States Supreme Court."). "This is true, even though the state court judgment may have been erroneous." In re Sun Valley Foods Co., 801 F.2d 186, 189 (6th Cir. 1986). The lack of jurisdiction is not altered by claims that the state judgment is unconstitutional, see Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d at 628 ("It is well-established that lower federal courts have no jurisdiction to hear appeals from state court decisions, even if the state judgment is challenged as unconstitutional."), or that the plaintiff's constitutional rights were violated in the state proceeding, see Musslewhite v. State Bar of Texas, 32 F.3d 942, 944, 947 (5th Cir. 1994); Tidik v. Ritsema, 938 F.Supp., 416, 424 (E.D. Mich. 1996) (holding that district court

had no jurisdiction to consider plaintiff's claims that this constitutional rights were violated in state divorce proceeding).

"The Supreme Court has applied the Rooker-Feldman jurisdictional bar to two categories of claims, those (1) actually decided by a state court, see Rooker v. Fid. Trust Co., 263 U.S. 413, 415 (1923) ... or (2) 'inextricably intertwined' with a state court judgment, see District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 48[3] n.16 ..." Pittsburgh County Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694, 707 (10th Cir. 2004); see also Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698, 703 (1st Cir. 1995) ("Constitutional claims presented to a United States district court, and found to be 'inextricably intertwined' with state court proceedings, impermissibly invited the federal district court, 'in essence,' to review a final state court decision.") (quoting Dist. of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 483 n. 16, (1983)); Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F.Supp.2d, 214-15 ("Even if the claim was not presented to a state court, the Rooker Feldman doctrine forecloses lower federal court jurisdiction over claims that are inextricably intertwined with the claims adjudicated in a state court.") (citations and internal quotation marks omitted).

> While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999)(quoting Penzoil Co. v. Texaco Inc., 481 U.S. 1 (1987) (Marshall, J., concurring)); see also Edwards v. Illinois Bd. of

Admissions to Bar, 261 F.3 723, 729 (7th Cir. 2001) ("To determine whether the injury is inextricably intertwined, we focus on whether the federal court is being called upon to review the state court decision.); Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F. Supp.2d at 215 (" 'Inextricably intertwined' is defined as a situation where the federal claim can only succeed if the state court claim fails. In other words, the federal court would have to reverse the state court for the federal claim to prevail.") (citations omitted).

It is clear from Plaintiff's Complaint that it seeks to have this court review a decision of the RI Supreme Court. "This the District Court may not do." Dist. of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 483 n.16. In order for this Court to grant Plaintiffs the relief they seek, a declaration that Rules 5.4(a) and 7.2(c) of the Rhode Island Rules of Professional Conduct and R.I. Gen. Laws § 11-27-3 are unconstitutional must be issued. The Court would have to address the merits of, and, indeed, reverse, the state court's decision. see Hill v. Town of Conway, 193 F.3d at 39 ("Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding.") (quoting Snider v. City of Excelsior Springs, Missouri, , 154 F.3d 809, 811-12 (8th Cir. 1998)); see also Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F.Supp.2d at 215 ("In other words, the federal court would have to reverse the state court for the federal claim to prevail."). Rooker-Feldman precludes such an adjudication. Hill v. Town of Conway, 193 F.3d at 40.

The issue of the constitutionality of payment of attorneys' fees directly to the ACLU has been addressed by the highest court of the State of Rhode Island. At that point, Plaintiff's recourse was to appeal to the United States Supreme Court. See

Schneider v. Colegio de Adbogados de Puerto Rico, 917 F.2d at 628 ("Review of state decisions may be obtained only in the United States Supreme Court."); Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F.Supp.2d at 214 ("The only appropriate federal appellate court to a state court is the United States Supreme Court."). They cannot instead choose to relitigate the matter in this court. See Wilson v. Shumway, 264 F.3d at 125 ("[L]ower federal courts lack jurisdiction to review decisions of the state courts."); Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698, 703 (1st Cir. 1995) ("Lower federal courts are without subject matter jurisdiction to sit in direct review of state court decisions.").

**Res Judicata**

> *Res judicata*, or claim preclusion, applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible mater which might have been offered for that purpose.

Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)(citation and internal quotation marks omitted); see also ElGabri v. Lekas, 681 A.2d 271, 275 (R.I. 1996) ("When invoked, it makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or, that could have been presented and litigated therein."). The doctrine of *res judicata* "maximize[s] judicial efficiency by eliminating duplicative litigation," DiBattista v. State, 808 A.2d 1081, 1086 (R.I. 2002), and prevents "multiple and possibly inconsistent resolutions of the same lawsuit," id.

Federal district courts are required to "give state court judgments the same *res judicata* effect that the state's own law prescribes." Keating v. Rhode Island, 785 F.Supp. 1094, 1098 (D.R.I. 1992); accord Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered,"). Under Rhode Island law, *res judicata* "bars any relitigation (1) of the same cause of action (2) between the same parties or their privies (3) after final judgment has been rendered on the merits in the first suit." Keating v. Rhode Island, 785 F.Supp. at 1098; see also DiBattista v. Rhode Island, 808 A.2d at 1086 ("*Res judicata* serves as an absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.") (citations and internal quotation marks omitted); ElGabri v. Lekas, 681 A.2d 271, 275 (R.I. 1996) (same). The rule is not altered because Plaintiff's Complaint alleges a violation of constitutional rights. See Lovely v. Laliberte, 498 F.2d 1261, 1263 (1st Cir. 1974).

**Stare Decisis**

Senior Judge Lagueux recently entertained, and rejected, this same argument. Specifically, Judge Lagueux stated that:

THE COURT: Plaintiffs. Plaintiffs. That's who receives it in all these fee cases. The judgment is in favor of the Plaintiffs, not in favor of any law firms or any organizations. It's in favor of the Plaintiffs.

***

THE COURT: Your understanding is incorrect. In this court, in every case where I have awarded counsel fees under 1988 or any other statute, the award has been made to the Plaintiffs.

The Plaintiffs then do with the money whatever they shall. If they have a fee arrangement with the lawyers, then they pay the money to the lawyers, but that's no concern of the Court; and you will notice that 1988 specifically says the prevailing parties, and this motion was made on behalf of the Plaintiffs.

I've never had a case where I've awarded fees to lawyers or any organizations. As a matter of fact, I think it's well-established that the Court, in awarding fees of this kind, awards it to the parties without regard to their fee arrangement because it's improper to even consider the fee arrangement when counsel fees are being awarded in these cases.

*Transcript*, RIMS v. Pine, 9-30-04, pgs. 5-6

I don't have any concern about how this fee is going to be paid or who's going to pay it or who's going to receive it. ... The judgment is for the Plaintiffs for the fees. That's in accordance with [42 U.S.C. Section] 1988. It's in accordance with the procedure that's been followed here in every case that I've been involved with. It's a judgment for the Plaintiffs for those counsel fees for that amount. How that is distributed is no concern of mine.

*Transcript*, RIMS v. Pine, 9-30-04, p. 34.

The recourse in that instance was via an appeal to the First Circuit. This was not done. That decision thereby clearly states the law in this jurisdiction, controls in this instance, and mandates dismissal of the instant action.

**Ripeness**

The jurisdiction of this Court should not be exercised absent an actual case or controversy, something totally lacking in the present filing. Article III of the Constitution limits the federal courts to adjudicating actual "cases" or "controversies." U.S. Const. art. III, § 2. To establish a justiciable case or controversy under Article III, a plaintiff must show not only that it has standing to assert its claims, but also that now is an appropriate time for judicial intervention, meaning that the case is ripe for review. See Renne v. Geary, 501 U.S. 312, 320 (1991). Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review. See Abbott Labs. v. Gardner, 387 U.S. 136 (1967). Like the other

justiciability doctrines, the ripeness doctrine seeks to confine courts to their proper role as the branch of government charged with deciding actual controversies, not abstract legal questions. 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3532 at 114-15 (2d ed.1984). As such, the requirement prevents courts from deciding claims arising out of "contingent future events that may not occur as anticipated, or indeed may not occur at all." Tex. v. United States, 523 U.S. 296, 300 (1998) (internal citations and quotation marks omitted). The requirement of ripeness is "particularly relevant in the context of actions for preenforcement review of statutes," because it "focuses on the timing of the action." Navegar, Inc. v. United States, 103 F.3d 994, 998 (D.C.Cir.1997). Therefore, a court will not hear a pre-enforcement challenge to a statute unless the dispute is ripe for adjudication.

In order to determine ripeness, courts apply a two-pronged test. The Court must "evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration." Abbott Labs., 387 U.S. at 149. In determining whether an issue is fit for judicial review, the central focus is on "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13A Wright, Miller & Cooper, Federal Practice & Procedure, § 3532 at 112.[3] In assessing the second prong of the test, the hardship to the parties of withholding judicial resolution, the court's inquiry "'typically turns upon whether the challenged action creates a "direct and **immediate**" dilemma for the parties.' W.R. Grace & Co. v. United States EPA, 959 F.2d 360, 364 (1st Cir.1992). "[T]he mere existence of a statute [in dispute] ... is ordinarily not enough to sustain a judicial

---

[3] See United Transp. Union v. Foster, 205 F.3d 851, 858 (5th Cir. 2000) (holding pre-enforcement pre-emption challenge to state statute authorizing law enforcement officers to administer testing of railroad crews involved in collisions was not ripe for judicial review).

challenge, even by one who reasonably believes that the law applies to him and will be enforced against him according to its terms." National Student Ass'n v. Hershey, 412 F.2d 1103, 1110 (D.C.Cir.1969). Instead, it must be demonstrated that the plaintiff will sustain **immediate injury**. Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 81 (1978).[4]

The party seeking to invoke the jurisdiction of the federal court has the burden affirmatively to show that it raises a case or controversy, City of L.A. v. Lyons, 461 U.S. 95, 101 (1983), and that it can overcome the jural presumption that jurisdiction is lacking, Renne, 501 U.S. at 316 (citation omitted). The ACLU has failed to allege facts satisfying either prong of the ripeness test: fitness of the issue for judicial resolution, both factually and legally, and hardship to it of withholding judicial consideration at this time. Unlike the drug manufacturers in Abbott Labs, 387 U.S. 136 (1967), but like the cosmetics companies in Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 164 (1967), the ACLU "need not change its behavior imminently or risk costly sanctions." Clean Air Implementation Project v. EPA, 150 F.3d 1200, 1205 (D.C.Cir.1998).

For the foregoing reasons, the Defendants respectfully request that the Court dismiss the instant action.

[4] While a plaintiff need not await the consummation of a threatened injury, the injury must, nonetheless, be "certainly impending". Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)(citation omitted); see also Renne, 501 U.S. at 320 (plaintiff must demonstrate that it has felt the effects of the challenged statute in a concrete way).

Respectfully submitted,

DEFENDANTS
By Their Attorney

PATRICK C. LYNCH
ATTORNEY GENERAL

Rebecca Tedford Partington #3890
Deputy Chief--Civil Division
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400 x 2303
Fax (401) 222-2995

**CERTIFICATION**

I, the undersigned, hereby certify that a copy of the foregoing document was mailed, postage prepaid, on this 7th day of March, 2005 to the person or persons indicated below:

Mark W. Freel, Esquire
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903